**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **Motile Optics, LLC** | § § | |
| **Plaintiff,** | § § | |
| | § | Case No.  6:15-cv-01177 |
| *v*. | § § | |
| **Apex Digital Inc.** | § § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § § § § § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Motile Optics, LLC, ("Plaintiff" or "Motile"), by and through its undersigned counsel, for its Complaint against Defendant Apex Digital Inc, ("Defendant") makes the following allegations.  These allegations are made upon information and belief.

**NATURE OF THE ACTION**

1. This is an action against Defendant for infringement of at least claim 1 of United States Patent No. 6,047,223 ("the '223 Patent").

**PARTIES**

2. Plaintiff Motile Optics, LLC is a Texas limited liability Company with its principal office located in Texas, at 719 W. Front Street, Suite 211, Tyler, Texas 75702.

3. Defendant, Apex Digital Inc., is a California corporation with its principal place of business at 4401 Eucalyptus Ave Suite 100, Chino, California 91710.

## JURISDICTION AND VENUE

4. This patent infringement action arises under the patent laws of the United States, including 35 U.S.C. §§ 271, et seq.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § § 1331 and 1338(a) because it arises under United States Patent law.

6. This Court has personal jurisdiction over the Defendant because they (either directly or through their subsidiaries, divisions, groups or distributors) have sufficient minimum contacts with the forum as a result of business conducted within the State of Texas and this district; and/or specifically over the Defendant (either directly or through their subsidiaries, divisions, groups or distributors) because of their infringing conduct within or directed at the State of Texas and this district. At a minimum, upon information and belief, Defendant have offered for sale, both over the internet and/or at various retail stores such as Amazon, Best Buy and WalMart in this district, consumer electronic products that infringe on one or more claims of the '223 Patent.

7. Venue is proper in this district pursuant to 28 U.S.C. §1391(c) and 1400(b) because Defendant is deemed to reside in this district. In addition, at a minimum, Defendant is subject to this Court's personal jurisdiction in that the acts and transactions including the sale of consumer electronic products, which incorporate the technology covered by the patents identified herein through the State of Texas and this district.

## FACTS

8. Plaintiff is the owner, by assignment, of U.S. Patent No. 6,047,223 ("the '223 Patent"), entitled "Electronic computer having a magneto-optic unit," which was duly and legally issued on April 4, 2000, by the United States Patent and Trademark Office.

9. A copy of the '223 Patent is attached to this Complaint as Exhibit A.

10. The claims of the '223 Patent are valid and enforceable.

11. Defendant at a minimum sells a DVD player called the Apex AD-1500, which is discussed hereafter as an exemplary model.

12. On information and belief, the DVD player has a central processing unit ("CPU") and memory connected to the CPU for storing data and programs. For example, the following screengrab from the user manual illustrates the ability of the DVD player to produce slow motion images, which requires a CPU for processing the data, and memory connected to the CPU for storing data and programs. *See,* Exhibit B

13. The CPU is also connected to a compact disk reading unit for reading pre-recorded data on removable disks of different types. For example, the screengrab from the user manual shows that the DVD player can play DVD's, Video CD, Audio CD and MP3 CDs. *See* Exhibit C.

14. Additionally, the CPU is connected to an input receiving means for receiving input from an external input unit. An exemplary input receiving means is a a remote control. The DVD player in this instance has a remote control unit as shown in the screen grab from the manual. *See* Exhibit D.

15. The CPU is also connected to a connecting means for connecting an external video unit to said CPU. For example, the screengrab from the manual shows instructions for connecting the CPU to a TV. *See* Exhibit E.

16. Furthermore, the DVD player has a physical console with a plurality of actuating elements, which are selectively actuatable. In this instance, see the screen

grab of the manual below which illustrates the actuating elements, e.g. the control buttons for the DVD player. *See,* Exhibit F.

17. Audio CD's and Video CD's have information in the first few sectors to identify the type of content. The standards used in these first few sectors to identify the content is generally called Rainbow Books. For example, the specifications of the Audio CD are available in the IEC 60908 standard called Red Book, the Video CD standards are available in the White Book, Super Audio in Scarlet Book, etc. In this instance, the DVD player has the same actuating elements, but one or more of the same actuating elements perform different functions based on the type of CD that is inserted into the unit.

18. The actuating elements in turn, generate command signals for the CPU for commanding the functions of the CD reading unit on the basis of predefined programs stored into the memory means and based on the type of removable disk inserted into the CD reading unit. The DVD player in this instance is capable of playing at least Video CD's and Audio CDs. The DVD player actuating elements therefore generate command signals for the CPU based on stored programs for playing a Video CD or an Audio CD, and based on the type of removable disk inserted into the CD reading unit. *See* Exhibit C.

19. The CPU of the DVD player is able to recognize the type of removable disk inserted into the CD reading unit by comparing data read from the removable disk, with the data stored in said memory means. There is no input required from the user to select the type of disc used. The DVD player in this instance recognizes at least Video CD's and Audio CD's. The DVD player uses the rainbow book specifications stored in the memory means and compares them to the data from the removable disk.

20. Finally the CPU can communicate with the console control means through input output signals indicating the type of removable disk. The console control means is in turn able to control said actuating elements to generate command

signals in accordance with said Input Output signal. As indicated above, the exemplary DVD player, receives input from the console control means based on whether a Video CD is inserted or an Audio CD is inserted.

21.   The exemplary DVD player has all the elements of a least Claim 1 of U.S. Patent No. 6,047,223. Although presented only for the exemplary DVD player, these same facts apply to other models based on the similarity of features in the other DVD players sold by the Defendant.

## COUNT I: CLAIM FOR PATENT INFRINGEMENT
## UNDER 35 U.S.C. § 271 ('223 PATENT)

22.   Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 21 of this Complaint as if fully set forth herein.

23.   Defendant at a minimum sells or offers for sale or offered for sale in the United States consumer electronic products, namely digital disc playback devices, including without limitation the products having the following model numbers: Apex AD-1500, AD-1110, AD-1110W, AD-1500, AD-500w, MD 100DVD, MD 100, DRX-9000, AD1118, AD-703A, AD-600A and AD-1000 (the "Accused product(s)"). Plaintiff explicitly reserves the right to add additional models and products other than those discussed here based on information obtained during discovery.

24.   Each Accused Product(s) is a consumer electronics device comprising a central processing unit (CPU), memory connected to the CPU for storing data and programs, and a compact disk (CD) reading unit connected to the CPU for reading data pre-recorded on a removable disk of different types (e.g. CD, DVD, Blu-Ray, etc.).

25.   Each of Defendant's Accused Product infringes on at least Claim 1 of the '223 patent.

26.   Plaintiff has been, and will continue to be, irreparably harmed by Defendant's ongoing infringement of the '223 patent.

27. As a direct and proximate result of Defendant's infringement of the '223 Patent, Plaintiff has been and will continue to be damaged in an amount yet to be determined, including but not limited to Plaintiff's lost profits and/or a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

A. In favor of Plaintiff that Defendant has infringed one or more claims of the '223 Patent;

B. Requiring Defendant to pay Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for Defendant's infringement of the '223 Patent as provided under 35 U.S.C. § 284, but not less than a reasonable royalty; and

C. For such other and further relief as may be just and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues and causes of action triable to a jury.

DATED: December 30, 2015          Respectfully submitted,

*/s/ Rasheed M. McWilliams*

Rasheed M. McWilliams
CA Bar No. 281832
rasheed@cotmanip.com
Daniel Cotman
CA Bar No. 218315
dan@cotmanip.com
Cotman IP Law Group, PLC
35 Hugus Alley, Suite 210
Pasadena, CA 91103
(626) 405-1413/FAX (626) 316-7577

**Attorneys for Motile Optics, LLC**